Eric HAMPE

v.

M. R. HOGAN, Warden.

Civ. No. 74-216.

United States District Court,
M. D. Pennsylvania.

Sept. 26, 1974.

John R. Bonner, Williamsport, Pa., for petitioner.

S. John Cottone, U. S. Atty., Scranton, Pa., Michael McDowell, Asst. U. S. Atty., Lewisburg, Pa., for defendant.

MEMORANDUM AND ORDER

NEALON, District Judge.

Petitioner, incarcerated at Lewisburg, has sought to have this Court direct defendant to make arrangements to move petitioner to a private hospital so that he may be examined by private proctologists. He contends that the federal prison medical system has done all it can with respect to his severe rectal problems, and is incapable of performing that type of sophisticated, specialized

surgery necessary to rectify his medical difficulties; viz., sphincter muscle transplants. Two affidavits of Dr. John M. Mazur, M. D., the general medical officer at Lewisburg Federal Penitentiary, attest to the facts that the plaintiff has a long history of severe anal problems, particularly with perirectal abscesses; that he had received nine rectal operations prior to his incarceration; and that while in prison he has undergone seven perirectal and pelvirectal abscess operations at the Geisinger Medical Center, a private clinic of outstanding repute. When all these failed to heal the recurrent abscesses, he was sent to the Springfield, Missouri Medical Center for Federal Prisoners, where a diverting colostomy was performed which thereafter required the use of colostomy bags to collect petitioner's fecal matter.

Following the diverting colostomy, petitioner continued to have the same rectal abscess difficulty. This surgery had exhausted all methods of treatment deemed necessary and available in the federal system for this medical problem. The petitioner then sought the advice of Dr. Arthur F. Snyder, M. D., a staff surgeon at Geisinger, who replied that there were three possible courses the petitioner may follow, viz., to reanastomose the colon and leave the rectum in place; to resect the rectum and effect a Miles Procedure upon the petitioner; or to allow the diverting colostomy to remain in place; and that he attests that medically, the best alternative was to remain with the diverting colostomy in an effort to determine whether the abscesses could cure themselves, since if the first is performed the rectum may cease functioning, and that the second offers substantial risks since a high mortality rate is associated with that procedure.

The petitioner has received letters from three private surgeons which in essence say that a remedy, such as a sphincter transplant, may be available although such operations are still in the "primitive stages" and that, of course, petitioner must first be examined to determine what his real problem is and whether this surgery may cure it. These letters are the sole support for petitioner's contention that he is being denied adequate medical treatment in the federal system and therefore should be permitted to enter a private hospital for examination in an effort to secure medical relief. Petitioner's counsel has indicated that no additional expert testimony will be adduced at any hearing on this matter [1] and that the petitioner will rely solely on the letters discussed above, and one more from the University of Virginia, which is to be produced at the hearing.

■■ There are two standards used by the courts in determining whether the medical treatment afforded federal prisoners is proper; viz., whether the prison medical authorities have "abused their discretion" in treating petitioner, e. g., Roy v. Wainwright, 418 F.2d 231 (5 C.A.1969), or whether the treatment rendered has been "reasonable". Blanks v. Cunningham, 409 F.2d 220 (4 C.A. 1969). By whatever standard, the prisoner cannot be the judge of what treatment need be rendered to him. Bretz v. Superintendent, 354 F.Supp. 7 (W.D. Va.1973). "In the absence of factual allegations of obvious neglect or intentional mistreatment, the courts should place their confidence in the report of reputable prison physicians that reasonable medical care is being rendered." Cates v. Ciccone, 422 F.2d 926 (8 C.A.1970).

■ Here, there are no allegations, nor any evidence provided, which would show that petitioner has received anything but the best available medical care. Petitioner has undergone the most intensive medical treatment for his particular malady that could be afforded him in the federal prison system; he has received a total of eight operations both at governmental and private insti-

---

1. While petitioner plans on subpoenaing Dr. Snyder, there is no representation that his testimony will be any different from that contained in his letter of July 9, 1974, which has been submitted by the Government as an exhibit.

tutions. In light of the fact that more advanced relief, in the form of a sphincter muscle transplant, is still in the extremely early stages of development and can be performed by only a very few surgeons in a very few circumstances; and further that alternative methods available in the federal system are dangerous and may not relieve the petitioner of his difficulties, it appears that the treatments already received may be his only remedy. It is the consensus, moreover, among the physicians involved that the constant recurrence of rectal abscesses, rather than sphincter muscle damage is petitioner's real problem. Should the colostomy be closed, whether subsequent to a transplant or resection or prior thereto, the abscess healing may be retarded.

I am, as all concerned are, in sympathy with the petitioner's medical plight, but the degree of medical treatment afforded him is in full accord with our judicial sense of fair and adequate treatment.

Accordingly, this petition for a writ of habeas corpus is hereby dismissed.